IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JEFFREY BUTTS, KIMBERLY BUTTS,
SHARRON BUTTS, SHANALE RENEE HILL,
SANDRA JONES, PATRICIA COX, LANE
TOWNSEND AND MONTGOMERY COUNTY
SCHOOL DISTRICT                                                                                      PLAINTIFFS

V.                                                    CIVIL ACTION NO. 4:18CV001-NBB-JMV

ROSEMARY AULTMAN, in her official capacity
as Chairman of the State Board of Education;
DR. CAREY M. WRIGHT, in her official capacity
as Superintendent of the Mississippi Department of
Education; JASON DEAN; BUDDY BAILEY;
KAMI BUMGARNER; KAREN ELAM; JOHNNY
FRANKLIN; WILLIAM HAROLD JONES; JOHN
KELLY; AND FRANK MCCLELLAND, all in their
official capacities as members of the Mississippi
State Board of Education; WINONA MUNICIPAL
SEPARATE SCHOOL BOARD; AND MONTGOMERY
COUNTY, MISSISSIPPI                                                                                  DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon Plaintiffs' Second Motion for Preliminary Injunction and the State Defendants' motion to dismiss.[1] Upon due consideration of the motions, briefing, oral arguments, and applicable authority, the court is ready to rule.

---

[1] In addition to the State Defendants' motion to dismiss, which will be addressed herein, the State Defendants' motion for judgment on the pleadings, as well as Plaintiffs' cross motion for summary judgment, remain pending. Plaintiffs filed their Third Amended Complaint subsequent to these dispositive motions, however; and the State Defendants' re-urged motion to dismiss, Plaintiffs' response thereto, and the parties' briefing appear to address all the pending issues and arguments which remain viable and relevant that were previously set forth in the motion for judgment on the pleadings and the cross motion for summary judgment. The court's ruling herein should, therefore, dispose of all matters in this case with the exception of Plaintiffs' claim against defendant Montgomery County, which has neither filed a dispositive motion nor joined the present motion to dismiss.

Factual and Procedural Background

Plaintiffs initially filed this lawsuit on November 17, 2017, in the United States District Court for the Southern District of Mississippi, seeking declaratory and injunctive relief concerning their disagreement with the Mississippi Legislature's decision to administratively consolidate the two school districts in Montgomery County, Mississippi, into one countywide school district. The Southern District court granted Plaintiffs' motion to change venue, and the case was transferred to this district on January 5, 2018, and later transferred within the district from the district judge initially assigned to the case to the undersigned district judge on June 5, 2018.

Plaintiffs' Third Amended Complaint seeks a declaration that the consolidation statute, Miss. Code Ann. § 37-7-104.4, is unconstitutional, that it is violative of the constitutional guarantee of equal protection, that, as implemented, it dilutes voting rights in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973,[2] that it should be prevented from taking effect as drafted, and that the Winona Municipal Separate School District Board, acting as the Winona-Montgomery Consolidated School Board, should be enjoined from taking any further action and that any action taken to date pursuant to the allegedly unconstitutional statute should be voided.

The State Defendants moved to dismiss all claims asserted by Plaintiffs. Subsequently, on July 1, 2018, the consolidation statute went into effect, and the two school districts in Montgomery County were formally consolidated, to be governed by an appointed interim board

---

[2]It appears Plaintiffs' Section 2 Voting Rights Act claims are now directed only against defendant Montgomery County and its implementation of the consolidation statute. In the event the court misinterprets Plaintiffs' intentions, insofar as the claims are directed at the State Defendants, the court finds that the Voting Rights Act applies to elective offices only. *Chisom v. Roemer*, 501 U.S. 380, 399-400 (1991); *see also Searcy v. Williams*, 656 F.2d 1003, 1010 (5th Cir. 1981) (finding "this case involved an appointive rather than an elective scheme, and thus the district court was correct in holding that voting rights did not apply"). As will be addressed below, the system contemplated by the consolidation statute is fully appointive in regard to the interim board and basically appointive in regard to the permanent board, as a majority of the members are appointed.

comprised of the existing Winona Municipal Separate School District Board from July 1, 2018, until January 1, 2019, at which time the permanent board will take effect. As provided by statute, the permanent board will consist of three members of the existing "Board of Trustees of the Winona Municipal Separate School District appointed by the Board of Aldermen of the City of Winona with the most years remaining in their terms." Miss. Code Ann. § 37-7-104.4(3)(b). The two remaining members were elected by Montgomery County voters residing outside of the Winona corporate limits in November 2018 – one from each of two districts drawn by the defendant Montgomery County's Board of Supervisors. The permanent consolidated board will therefore be a combined board comprised of both appointed and elected members – the majority appointed.

## Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Id.* But the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go

beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand,* 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly,* 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

In ruling on a Rule 12(b)(6) motion to dismiss, the court generally may not look beyond the pleadings. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Matters of public record and matters of which the court may take judicial notice as well as documents attached to the complaint are exceptions. *Id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2001).

Analysis

*Motion for Preliminary Injunction*

As an initial matter, the court finds that Plaintiffs are not entitled to a temporary restraining order or a preliminary injunction. A preliminary injunction is an "extraordinary remedy." *Texans for Free Enterprise v. Tex. Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013). A plaintiff seeking a preliminary injunction must clearly show:

> (1) A substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he

seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017). "Failure to sufficiently establish any one of the four factors requires [the court] to deny the movant's requests for a preliminary injunction." *City of Dallas v. Delta Airlines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017).

As will be addressed below in the court's analysis of the State Defendants' motion to dismiss, Plaintiffs have not shown a substantial likelihood that they will prevail on the merits nor have they shown the threat of irreparable injury. Further, even if Plaintiffs had successfully raised a presumption of irreparable harm, such a presumption may be rebutted by Plaintiffs' undue delay in seeking injunctive relief which demonstrates "that there is no apparent urgency to the request for injunctive relief." *Ronaldo Designer Jewelry, Inc. v. Cox*, 2017 WL 3879095 (N.D. Miss. Sept. 5, 2017) (quoting *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006)); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 570 (S.D. Tex. 2014) ("Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm.").

The consolidation statute was passed by the Mississippi Legislature in 2016 and went into effect on July 1, 2016. Miss. Code Ann. § 37-7-104.4. Yet Plaintiffs did not file the instant lawsuit claiming the need for emergency injunctive relief until approximately one year and four months later on November 17, 2017. Such a delay indicates the absence of an emergency nature to this matter and a lack of risk of irreparable harm, considering the length of time it took Plaintiffs to discover and present their claims.

*State Defendants' Motion to Dismiss*

Plaintiffs, through counsel, made clear at the hearing in this case held on December 4, 2018, that they challenge the constitutionality of the consolidation statute both on its face and as implemented by the defendant Montgomery County in its apportionment of the two districts which will elect the two board members from the county outside Winona's corporate limits. Montgomery County has filed no dispositive motion in this matter, however; and the court will focus only on the State Defendants' motion to dismiss, which was joined by defendant Winona Municipal Separate School Board.

Plaintiffs have conceded that "there are no facts to support an equal protection claim based on race." Docket 53, 55.

Accordingly, the questions to be addressed here are:

Whether the interim board violates the one person, one vote principle embraced by the Equal Protection Clause;

Whether the permanent consolidated board violates the one person, one vote principle embraced by the Equal Protection Clause; and

Whether the consolidation statute survives rational basis review.

I. Interim Board

The interim board, which will shortly conclude its service, is comprised entirely of members appointed by the governing officials of the City of Winona. It is well-settled that the "one person, one vote" concept embraced by the Equal Protection Clause applies only to *elected* governing bodies. *Reynolds v. Sims*, 377 U.S. 533 (1964); *Sailors v. Bd. of Educ. of Kent County*, 387 U.S. 105 (1967).

*Sailors v. Bd. of Educ. of Kent County* involved a challenge to the procedure for selecting county school boards in Michigan. *Sailors*, 387 U.S. at 108. Local school boards were elected,

presumably in accordance with the one man, one vote principle, but the county boards were chosen by delegates from the local boards. *Id.* Each local board received one vote, regardless of the population represented by that board. *Id.* Despite this fact, the Court held the procedure to be constitutionally permissible, reasoning:

> Viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation. At least as respects non-legislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here.

*Id.* at 110-11.

Plaintiffs argue that the board in *Sailors* is distinguishable from the interim board in the present case because the board in *Sailors* was chosen by delegates selected by local school boards – one delegate from each local board, whereas the interim board in the present case is comprised solely of residents of the City of Winona. As the defendants assert, Plaintiffs' argument takes the analysis a step too far. The Court in *Sailors* did not analyze the residency of the appointed members to determine whether the structure of the board was one person, one vote compliant. The doctrine of one person, one vote seeks to protect the voter's right to an equal voice in choosing elected representatives, which is not implicated where members of a board are appointed. *Sailors*, 387 U.S. at 111. To consider the residency of the interim board members, as Plaintiffs urge, would be to apply one person, one vote in the context of an appointive system, which is precisely what *Sailors* instructs *not* to do.

Despite the well-settled premise that appointed boards do not trigger one person, one vote, Plaintiffs argue that "Defendants would have this Court believe that every appointed body is automatically constitutional." But this statement misses the mark. *Sailors* and its progeny do not stand for the position that appointive systems "automatically" pass muster under all federal

laws – simply that they do not implicate one person, one vote. To borrow the State Defendants' example, an appointive system conceivably could run afoul of constitutional principles if, say, a plaintiff could establish that an impermissible discriminatory purpose, for example, racial animus, motivated the legislature to enact the law. In the present case, however, Plaintiffs have explicitly disavowed any such racial intent claim against the State Defendants.

II. Permanent Board

The permanent consolidated board will be a combined one with three of the five members appointed by the Board of Aldermen of the City of Winona and two elected from outside the city's corporate limits. Because the permanent board will be comprised of appointed and elected members, two questions are presented:

> Whether the one person, one vote principle embraced by the Equal Protection Clause applies at all to a majority appointed board; and

> If so, in what fashion does the principle apply to a majority appointed board so as to be consistent with *Sailors* and its progeny?

*Sailors* and its progeny have made clear that "a State can appoint local officials or elect them or combine the elective and appointive systems." *Sailors*, 387 U.S. at 110-11. "[W]here a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws." *Hadley v. Junior College Dist. of Metro. Kansas City, Missouri*, 397 U.S. 50, 58 (1970)).

Courts that have applied this rationale to combined boards have considered whether the majority of the board was appointed or elected. In *Cunningham v. Municipality of Metropolitan Seattle*, 751 F. Supp. 885 (W.D. Wash. 1990), the court was

faced with the opposite situation presented here; that is, a majority of the board at issue there was elected, and based on that fact, the court determined the board must be held to be an elected body and consequently must comply with one person, one vote. As Plaintiffs note, the court found it "unnecessary to decide whether and how the principle might apply if only a minority of the [board's] members were elected," as is the situation here. *Id.* at 893. The court did, however, acknowledge that the system at issue in *Sailors*, which did involve an elective step,[3] was, as the *Sailors* Court noted, "basically appointive rather than elective," and the one person, one vote principle did not apply. *Id.*

The parties have not cited, nor is this court aware of, a case precisely analogous to the factual scenario presented here where the combined board consists of a majority of appointed members, but common sense dictates and this court finds that, in light of *Sailors* and its progeny and consistent with the rationale set forth in cases such as *Cunningham*, a majority appointed board should be considered "basically appointive rather than elective," and the principle of one person, one vote is therefore not implicated. The court agrees with the State Defendants that the analysis can stop here.

Assuming *arguendo*, however, that the concept of one person, one vote does extend to the permanent board, the second question presented above still cannot be answered in Plaintiffs' favor. "In calculating the deviation among districts, the relevant inquiry is whether 'the ***vote*** of any citizen is approximately equal in weight to that of any other citizen,' the aim being to provide 'fair and effective representation for all citizens.'" *Bd. of Estimate of City of New York v. Morris*, 489 U.S. 688, 701 (1989) (quoting *Reynolds*, 377 U.S. at 565-66, 579). To advance their claims, Plaintiffs attempt to

---

[3]Under the facts of *Sailors*, the voters elected local school boards, and these boards then sent one delegate each to meet and choose the county board. *Sailors*, 387 U.S. at 106.

9

compare the relative "weight" of "votes" between the appointed positions from the City of Winona with the elected positions from Montgomery County. In other words, Plaintiffs attempt, in their proposed one person, one vote analysis, to compare votes with non-votes or elected positions with appointed ones. To do so requires the creation of a legal fiction – an exercise in which this court is not inclined to engage; and the court is aware of no case in which another court has previously done so. Indeed, in *Cunningham*, the court noted that "since the appointed members are not elected, the court would have to decide whom they are supposed to represent." *Cunningham*, 751 F. Supp. at 894 (addressing the "speculative nature" of trying to apply one person, one vote to appointed boards). This would be inappropriate and is not required, as again, "the aim of one person, one vote – to protect each voter's right to an equal voice in choosing elected representatives – is not involved where members of a board are appointed." *Id.* (citing *Sailors*, 387 U.S. at 111). Voters do not elect appointed members. As the State Defendants urge, this court declines Plaintiffs' invitation to contort the one person, one vote principle by distending its application to appointed board members.

III. Rational Basis Review

The right to vote is a "protected right, implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters whenever the State has adopted an elective process for determining who will represent any segment of the State's population." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, n.78 (1973). But while all citizens enjoy the right to participate in elections before them on an equal basis with all other citizens in the jurisdiction, there is no fundamental right to elect members of a school board. *Sailors*, 387 U.S. at 108; *Mixon v. Ohio*, 193 F.3d 389, 403

(6th Cir. 1999) ("Although Plaintiffs have a fundamental right to vote in elections before them, there is no fundamental right to elect an administrative body such as a school board."). Further, "[e]ducation . . . is not among the rights afforded the explicit protection under our Federal Constitution . . . [and] will not alone cause the Court to depart from the usual standard for reviewing a State's social and economic legislation." *Rodriguez*, 411 U.S. at 35.

As the present case does not involve a fundamental right, it likewise does not involve a suspect class. The parties agree that the consolidation statute does not make distinctions based on any constitutionally suspect classification, such as race.[4] Legislative classifications based on geographical criteria do not involve inherently suspect classes and are thus subject to rational basis review. *See Hearne v. Bd. of Educ. of City of Chicago*, 185 F.3d 770, 774 (7th Cir. 1999). In other words, "the Equal Protection Clause does not prohibit states from treating people located in different geographic areas differently." *Slade v. Hampton Roads Reg'l Jail*, 303 F. Supp. 2d 779, 782-83 (E.D. Va. 2004), *aff'd*, 407 F.3d 243 (4th Cir. 2005) (citing *Salsburg v. Maryland*, 346 U.S. 545, 551 (1954)).

In addition to their alleged claims based on the equal protection rights of the voters of Montgomery County, Plaintiffs also attempt to distinguish a separate classification for former employees of the Montgomery County School District. Plaintiffs assert that the consolidation statute "promotes maltreatment of the employees of Montgomery County Schools by requiring that all employees be terminated, while not

---

[4]Plaintiffs' Third Amended Complaint incorporates allegations regarding newly-named defendant Montgomery County's apportionment of the two elected positions, but those allegations are made only in the context of Plaintiffs' Voting Rights Act claim.

requiring similar treatment of the employees of Winona Municipal Separate Schools." Docket 80. This argument is untenable, however, as "[e]mployees of county governments do not comprise a suspect class, and the holding of public employment is not a recognized fundamental right." *Arceneaux v. Treen*, 671 F.2d 128, 133 (5th Cir. 1982). Plaintiffs have not alleged that any employee or former employee of Montgomery County School District was treated differently based on his or her race or other protected class. Further, Plaintiffs concede that the reason for the non-renewal of employees was because the Montgomery County School District was abolished as of July 1, 2018, and that non-renewed employees may apply for employment with the consolidated district and that some have done so and have already been hired.

As neither a fundamental right or a suspect classification is implicated in the case at bar, strict scrutiny is not appropriate, and the court applies rational basis review. "[L]egislation . . . that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose." *Hodel v. Indiana*, 452 U.S. 314, 331 (1981). "Rational basis review begins with a strong presumption of constitutional validity." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 354 (5th Cir. 2017). This presumption "can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel*, 452 U.S. at 332. Rational basis review "requires only that the legislative classification rationally promote a legitimate governmental objective." *Duarte*, 858 F.3d at 354. The court need only determine "that a purpose may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker," and not the actual purpose. *Id.* at 355. "It is irrelevant whether the

12

reasons given actually motivated the legislature; rather, the question is whether some rational basis exists upon which the legislature could have based the challenged law." *Goodpastor v. City of Indianapolis*, 736 F.3d 1060, 1070-71 (7th Cir. 2013). Plaintiffs carry the burden to show there is no "reasonably conceivable state of facts that could provide a rational basis for the classification." *Duarte*, 858 F.3d at 355. "If the challenged classification bears a reasonable relationship to the accomplishment of some legitimate governmental objective, the statute must be upheld." *Yur-Mar, LLC v. Jefferson Parish Council*, 451 F. App'x 397, 401 (5th Cir. 2011).

Applying rational basis review to the case *sub judice*, the court finds a legitimate governmental purpose in the legislature's providing that public funds committed to public schools be spent in an efficient and effective manner. It is rational for the legislature to conclude that school districts – each with its own school superintendent, central administrative office, and school board – and especially smaller school districts such as Montgomery County, which prior to consolidation served less than 250 students – may more efficiently spend scarce public funds if those districts are consolidated into larger administrative units.

The court finds that the legislature could rationally conclude that the consolidation will not only effectuate the more efficient use of public funds, which in itself will help all the students of Montgomery County, including those within the corporate limits of Winona, but that it will also help better serve the students of the former Montgomery County School District, which, as mentioned, was extremely small – serving less than 250 students[5] – and which fell in the bottom ten performing school

---

[5] The Winona Municipal Separate School District, by contrast, had a total enrollment of 1078 students, according to enrollment data available from the Mississippi Department of Education. *See* http://mdereports.mdek12.org/data/.

13

districts in the State of Mississippi, according to the Mississippi Department of Education's 2017 Accountability Results. It is rational to conclude that these students will receive a better education as a result of the consolidation, and another legitimate governmental purpose will thereby be served.

As to the interim board, the court finds it rational for the legislature to conclude that a transition period for the administrative consolidation that is the subject of this lawsuit would be prudent and would best promote an efficient and smooth consolidation. The legislature could rationally conclude that the existing appointed board of the Winona Municipal Separate School District should serve as the interim board during the transition period and allow the election for the two elected positions of the permanent board to occur, as it did, on the regularly-scheduled general election day in November 2018, preventing the necessity of a special election, which would impose additional and unnecessary costs on Montgomery County. The fact that the interim board was comprised of all appointed members survives rational basis review, as courts have found that appointed school boards serve the purpose of "insulating school governance matters from direct political pressures" and "promoting stable school board membership." *Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352, 1355 (4th Cir. 1989). Further, as other federal courts have found, this court finds that "[s]tate legislatures need the freedom to experiment with different techniques to advance public education, and this need to experiment alone satisfies the rational basis test." *Mixon*, 193 F.3d at 403 (citing *Sailors*, 387 U.S. at 110-11).

Conclusion

For the foregoing reasons, the court finds that Plaintiffs' second motion for preliminary injunction should be denied and that the State Defendants' motion to dismiss should be granted. All claims except the claim asserted by Plaintiffs' against defendant Montgomery County shall be dismissed. A separate order in accord with this opinion shall issue this day.

This, the 21st day of December, 2018.

/s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE